NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3566
_____

JARGALMAA JAGDORJ;
BULGANTAMIR JARGALMAA,

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A094-783-424 & A094-783-425)
Immigration Judge:  Honorable Rosalind K. Malloy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 10, 2010

Before: RENDELL, JORDAN and VAN ANTWERPEN , Circuit Judges

(Opinion filed: November 17, 2010)
_____

OPINION OF THE COURT
_____

PER CURIAM

Petitioners seek review of the final order of the Board of Immigration Appeals

("BIA").  For the following reasons, we will deny their petition.

I.

The lead petitioner is Jargalmaa Jagdorj, and the claims of her son Bulgantamir Jargalmaa are derivative of hers. Both are citizens of Mongolia who entered the United States in 2006 on visitor visas (Jagdorj's husband and an older son remain in Mongolia). Jagdorj applied for asylum, withholding of removal and relief under the Convention Against Torture ("CAT") on the ground that she fears mistreatment in Mongolia on account of her political opinion. The Government charged her as removable under 8 U.S.C. § 1227(a)(1)(B) for having overstayed her visa, which she concedes.

According to Jagdorj's asylum application and testimony before the Immigration Judge ("IJ"), she is a member of Mongolia's Democratic Party.[1] In 2005, she worked as a secretary for a translation company. Another employee whose work she supervised, a man named Bataa, is a member of Mongolia's Communist Party. On September 8, 2005, Jagdorj discovered in a pile of documents that Bataa left for her to review a document implicating a member of the Communist Party in the theft of millions of Tugrugs (Mongolia's currency) from the Mongolian government and in plans to kill a Democratic Party member investigating the theft. Jagdorj asked Bataa about the document, but he claimed not to know what it was. She took the document with her.

Later that night, while she was walking with Bulgantamir, a car with four men in it hit him and fractured his leg. Bataa was a passenger in the car, and he got out and told

---

[1] Mongolia is a "multiparty, parliamentary democracy" which, since 2004, has operated under a coalition government. (A.R. 156.)

Jagdorj that if she told anyone about the document they would kill her children. She destroyed the document after that. Approximately one month later, she returned home to find Bataa and another man searching her house. They asked her if she had made copies of the document, and she told them no. Shortly thereafter, she began receiving threatening telephone calls every two days. The calls came from several men, one of whom she recognized as Bataa. She received these calls until leaving for the United States in February of 2006. Since she left, her husband and older child have gone into hiding because of the threats. On March 3, 2007, several men severely beat her older son while asking about her whereabouts. At some point, she learned that the investigator investigating the Communist Party member's theft had been killed.

Jagdorj presented evidence in addition to this testimony, including recent country reports and a newspaper article regarding the automobile incident. The IJ found her testimony credible but denied relief. The IJ concluded, among other things, that she had not shown a political motive for the alleged persecution and had not shown that any mistreatment was by the Mongolian government or by forces that it is unable or unwilling to control. Jagdorj moved for reconsideration, which the IJ denied. She then appealed to the BIA, which dismissed her appeal on August 20, 2009. She now petitions for review.[2]

---

[2] We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). Because the BIA issued its own decision instead of summarily affirming the decision of the IJ, we review only the BIA's decision. See Fiadjo v. Att'y Gen., 411 F.3d 135, 152 (3d Cir. 2005). We do so for substantial evidence and may not disturb the BIA's conclusions unless the evidence to the contrary "'was so compelling that no reasonable fact finder'" could have reached

## II.

As an initial matter, the BIA held that Jagdorj waived her CAT claim because she did not meaningfully challenge its denial on appeal, and she also does not challenge it on review in this Court. Accordingly, we too deem it waived. See Alaka v. Att'y Gen., 456 F.3d 88, 94 (3d Cir. 2006). Jagdorj challenges only the BIA's rejection of her claims for asylum and withholding of removal. To be eligible for asylum, Jagdorj bore the burden of proving that she has a well-founded fear of persecution, meaning "'[1] past or potential harm rising to the level of persecution [2] on account of a statutorily enumerated ground [3] that is committed by the government or by forces the government is unable or unwilling to control.'" Valdiviezo-Galdamez v. Att'y Gen., 502 F.3d 285, 289 (3d Cir. 2007) (citation omitted). To be entitled to statutory withholding of removal, Jagdorj bore the burden of proving that such persecution is more likely than not. See Gomez-Zuluaga v. Att'y Gen., 527 F.3d 330, 348 (3d Cir. 2008).

The BIA concluded, among other things, that Jagdorj had not shown (1) any nexus between the mistreatment at issue and her political opinion or (2) that the mistreatment would be committed by the Mongolian government or by forces that it is unable or unwilling to control. Jagdorj devotes the majority of her brief to challenging the former conclusion. Because the latter is dispositive and supported by substantial evidence, however, we need only address the latter.

them. Id. (citation omitted); see also 8 U.S.C. § 1252(b)(4)(B) (BIA's finding "are conclusive unless any reasonable adjudicator would be compelled to conclude to the

4

Some additional factual background is relevant to this issue. After Bulgantamir was hit by the car, Jagdorj called the police but eventually took Bulgantamir to a hospital by taxi after the police failed to arrive. (A.R. 108-09.) Police met her at the hospital, then took her to the scene of the accident. (Id. at 109.) Jagdorj believes that they did not carefully consider the scene and treated the case in a "very easy manner." (Id. at 132.) Jagdorj, however, did not tell them any of the details of what had transpired that day (i.e., the document and the threats). (Id. at 109.) Police later called her and told her they had determined that the incident was an accident. (Id.) They confiscated the car after the accident, but she does not believe that the driver was criminally charged. (Id. at 130-31.) The newspaper report she submitted states that the driver was speeding and that police told him he was "lucky" not to be going to prison. (A.R. 130, 242.) Jagdorj did not testify that she ever reported any of the other incidents or threats to police.

Jagdorj argues that the foregoing circumstances demonstrate that the Mongolian government is unable or unwilling to protect her against Bataa's threats. As the BIA explained, however, Jagdorj did not tell them the circumstances surrounding the automobile incident, so there is no basis to conclude that their determination that it was an accident constitutes unwillingness to protect her from Bataa's threats. Cf. Valdiviezo-Galdamez, 502 F.3d at 289 (granting petition where IJ ignored evidence that Honduran police failed to take action on five police reports regarding gang attacks). She also does not claim to have reported the other incidents or Bataa's threats to the police,

_____

contrary").

5

and has not cited any evidence suggesting that the Mongolian government would be unable or unwilling to protect her if she had. Cf. Fiadjo, 411 F.3d at 160-63 (granting petition where BIA ignored evidence that petitioner unsuccessfully sought help from Ghanaian police and country reports indicated that police would not intervene in persecution at issue).

Jagdorj argues in her brief that reporting the threats would have been "tantamount to suicide" because the Communist Party was the "ruling party" at that time (Petr.'s Br. at 10-11), but she cites no evidence for that argument and our review of the record has not revealed any.[3] To the contrary, the most recent country report of record (from 2006) states that Mongolia is a "multiparty, parliamentary democracy" operating under a "coalition government" and that "[t]he government or its agents did not commit any politically motivated killing[.]" (A.R. 156.) In sum, Jagdorj presented no evidence that the Mongolian government is unable or unwilling to protect her, let alone evidence sufficient to compel any reasonable factfinder to draw that conclusion.

Jagdorj also argues that the IJ abused her discretion in denying reconsideration and that the BIA issued an insufficiently reasoned decision. There is no merit to these arguments. Accordingly, the petition for review will be denied.

---

[3] Jagdorj's counsel asked her during her hearing why she did not report the underlying circumstances of the automobile incident to police. Unfortunately, the transcript reports her response as "(Indiscernible)." (A.R. 109.) Jagdorj, however, neither makes any representation about the substance of her testimony on this point nor argues that she was prejudiced by its absence from the record.